NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO A.C.

No. 1 CA-JV 26-0026

FILED 08-03-2026

---

Appeal from the Superior Court in Maricopa County
No. JS521138
The Honorable David D. Palmer, Judge

**AFFIRMED**

---

COUNSEL

Law Office of H. Clark Jones, LLC, Mesa
By H. Clark Jones
*Counsel for Appellant*

Law Office of Ed Johnson, PLLC, Peoria
By Edward D. Johnson
*Counsel for Appellee A.C.*

Stromfors Law Office, P.C., Chandler
By Stephanie A. Stromfors
*Counsel for Appellee Desiree M.*

_____

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge Brian Y. Furuya and Judge D. Andrew Gaona joined.

_____

**P E R K I N S**, Judge:

¶1            Carl C. ("Father") appeals the juvenile court's order terminating his parental rights to Aaron (a pseudonym). For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2            Aaron was born in December 2020 to Father and Desiree M. ("Mother"), who were separated but not yet divorced.

¶3            Between February and August 2021, Father kidnapped and sexually assaulted three women. Father committed one of the assaults during his parenting time, though he disputed the victim's report that Aaron was present. Father was first arrested for the assaults in August 2021 and spent the next three months in jail. He was arrested again in October 2022 and has remained in custody since.

¶4            In March 2024, Father pled guilty to three counts of attempted sexual assault and one count of attempted kidnapping, each class 3 felonies. The court sentenced him to 7.5 years' incarceration. Father is expected to be released in January 2029, at which time he must register as a sex offender and will be on lifetime probation with sex offender conditions.

¶5            In February 2025, Mother petitioned to terminate Father's parental rights over Aaron. Mother alleged four grounds: abandonment, child abuse, substance abuse, and length of felony sentence. At the two-day termination hearing in December 2025, the court heard testimony from Mother, Father, and several of their witnesses, including Mother's new husband ("Stepfather").

¶6            One of Father's witnesses testified that before his arrest, Father took Aaron to church and parks. Father testified he tried to call Mother in October and November 2022, and that he sent Aaron multiple postcards. He also testified that Mother blocked his family from seeing Aaron to prevent them from sending updates to Father. Mother admitted

to blocking Father's family from seeing Aaron, but testified that Father did not contact her about Aaron until he sent a postcard in February 2024 and did not call her until December 2024. She had her address protected after she learned Father had been convicted. Mother testified that after she filed the petition in February 2025, Father harassed her with multiple phone calls per day until the prison blocked Father's calls to Mother. She also testified that Father did not provide financial support for Aaron. Stepfather testified that he financially supports Aaron, that Aaron views him as his father, and that he wants to adopt Aaron.

¶7        In February 2026, the court terminated Father's rights on all four grounds. Father appeals, and we have jurisdiction. *See* A.R.S. §§ 8-235, 12-120.21(A)(1), -2101(A)(1).

## DISCUSSION

¶8        When reviewing a termination order, we will accept the court's factual findings if supported by reasonable evidence and inferences. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478, ¶ 30 (2023). "Because the juvenile court is in the best position to weigh evidence and assess witness credibility," we view the evidence in the light most favorable to sustaining the juvenile court's decision. *Id.* at 478–79, ¶¶ 30, 32 (cleaned up).

¶9        To terminate the parent-child relationship, the court must find (1) at least one statutory ground under Arizona Revised Statutes Section 8-533(B) by clear and convincing evidence, and (2) termination is in the child's best interests by a preponderance of the evidence. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018). We review the juvenile court's legal conclusions on the statutory grounds for clear error. *Brionna J.*, 255 Ariz. at 478–79, ¶ 31.

¶10       The juvenile court may terminate a parent's rights under the length of felony sentence ground "if the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." A.R.S. § 8-533(B)(4).

¶11       A "normal home" is "a stable and long-term family environment outside a foster care placement, where another parent . . . resides and parents the child, and where the incarcerated parent affirmatively acts to maintain a relationship with the child that contributes to rather than detracts from the child's stable, family environment." *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 477, ¶ 27 (2022). Whether a sentence is "sufficiently long to deprive a child of a normal home" is an individualized and fact-specific inquiry. *Jessie D. v. Dep't of Child Safety*, 251

Ariz. 574, 579, ¶ 9 (2021). The juvenile court considers six non-exclusive factors:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251–52, ¶ 29 (2000). "A lack of evidence on one or several of [these] factors may or may not require reversal or remand on a severance order." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 450, ¶ 15 (App. 2007).

¶12        On the first factor, the length and strength of the parent-child relationship before incarceration, the court found the preexisting relationship was, "at best, 22 months," and was significantly compromised because Father was "more focused on engaging in criminal behaviors than being a father and focusing on the needs and care of [Aaron]." The record supports the court's findings. Aaron was 22 months old when Father was arrested in October 2022, and Father has remained in custody since. During Aaron's first 22 months of life, Father committed three sexual assaults, one of which occurred during Father's parenting time and possibly while Aaron was present. And Father spent three of those 22 months in jail. This factor favors termination.

¶13        As to the second factor, the court found Father's ability to nurture his relationship with Aaron would be "significantly and negatively impacted." The court found that Father's lack of engagement with Aaron already compromised the relationship, which, combined with Aaron's young age and the "difficult logistical factors" caused by Father's incarceration would "further strain that relationship." Father argues the court should have allowed him to maintain a relationship with Aaron and that Mother frequently denied him contact. Reasonable evidence shows Father's lack of engagement during his incarceration was not solely the result of Mother's interference. Mother testified that Father did not contact

her about Aaron until February 2024, well over a year after his arrest. Though Father disputes that testimony, we will not reweigh the evidence. *Brionna J.*, 255 Ariz. at 478–79, ¶¶ 30, 32. We acknowledge that "difficult logistical factors" will exist in every relationship between an incarcerated parent and a young child, but combined with Father and Aaron's already strained relationship, this factor favors termination.

¶14 On the third and fourth factors, Aaron was under two years old when Father was arrested. He had just turned five years old at the time of termination and will be eight years old when Father is projected to be released. And given the nature of Father's felony convictions, it is unknown whether Father can contact Aaron upon his release because Father will be on lifetime probation with sex offender conditions. At minimum, Father will need reunification services before reuniting with Aaron. *See Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 214, ¶ 10 (App. 2016) (a court may consider circumstances that could delay reunification after release, such as release conditions and the time needed for a parent to complete services after his release). Given Aaron's young age and the length of Father's sentence, Aaron has been, and likely will be, deprived of a normal parental relationship with Father for many more years. These factors favor termination.

¶15 On the fifth factor, the availability of another parent, Father argues that Mother and Stepfather can provide Aaron with a normal home until Father is released from prison. But between Father and Mother, only Mother is available to give Aaron a normal home life, and Father has done little to contribute to the "stable and long-term family environment" created by Mother and Stepfather. *Timothy B.*, 252 Ariz. at 477, ¶ 27. Indeed, Father has undermined that stability. Mother sought and received a protected address once Father was convicted. Father has not provided financial support to Mother. And he harassed Mother with phone calls multiple times per day for months, resulting in the prison blocking her phone number.

¶16 Although the juvenile court did not make findings on the sixth factor, the effect of the deprivation of a parental presence on the child at issue, the record shows that this factor favors termination. Mother testified that Aaron views Stepfather, not Father, as his father and is already questioning why he has a different last name than the rest of his family. Stepfather testified that he has no legal right to make decisions for Aaron, and Mother testified that Aaron would be left without a parent to care for him if she were incapacitated. So even though Stepfather is present, Father's

absence is still negatively affecting Aaron. The court did not clearly err in terminating Father's rights under the length of sentence ground.

¶17 Because we affirm the termination based on the length of sentence ground, *see* Section 8-533(B)(4), we need not address the court's findings on the other statutory grounds. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds."). We do not address the court's best-interests finding because Father does not challenge it. *See Michael J.*, 196 Ariz. at 249, ¶ 13 ("[Appellant] has never challenged the superior court's best interest finding. We therefore accept that finding and do not address it further.").

**CONCLUSION**

¶18 We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR